IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-157-BO

PROGRESSIVE SOUTHEASTERN )
INSURANCE COMPANY, )
 )
          Plaintiff, )
 )
v. )     O R D E R
 )
EVERETT BARROW, *et al.*, )
 )
          Defendants. )

This cause comes before the Court on plaintiff's motion for summary judgment. The appropriate response and reply have been filed, and a hearing was held on the motion before the undersigned on January 4, 2018, at Raleigh, North Carolina. In this posture, the matter is ripe for ruling and, for the reasons that follow, this action is dismissed without prejudice.

## BACKGROUND

Plaintiff filed this action seeking a declaratory judgment under 28 U.S.C. § 2201(a) that it its Policy No. 06509223-6 issued to B&J Contracting affords no liability[1] coverage for injuries or damages arising out of an accident which occurred on August 29, 2014, and which resulted in the death of John Parmley. On August 29, 2014, Mr. Parmley and Everette Barrow drove two vehicles for B&J Seafood from New Bern, North Carolina to Newport News, Virginia carrying crew and equipment for B&J Seafood destined for boats in Newport News. [DE 38] Fulcher Aff. ¶ 7. On the way to Newport News, Mr. Parmley drove a 2005 International "rollback" truck (rollback

---

[1] Defendant Estate of Parmley has argued in opposition to summary judgment that plaintiff's uninsured/underinsured motorist coverage provisions provide coverage, but the only issue raised in the complaint is whether liability coverage has been triggered.

truck) and Mr. Barrow drove a 2014 Chevrolet Silverado pickup truck (pickup or pickup truck). [DE 40-1] Barrow Dep. at 12.

After Mr. Parmley dropped off some equipment in Chesapeake, Virginia, he met Mr. Barrow in Newport News where they picked up some equipment and put it on the rollback truck. *Id.* at 12-13. That equipment included a scallop dredge, which was loaded onto the rollback truck using a crane. *Id.* at 13. Once the dredge was loaded on the rollback truck, Mr. Barrow began to drive the rollback truck back to New Bern and Mr. Parmley began to drive the pickup back to New Bern. *Id.* at 49-50. As he was departing, Mr. Barrow drove over a bump and felt a shift in the load on the rollback truck. He stopped and waved to Mr. Parmley, telling him they needed to check the load. Mr. Parmley got out of the pickup and walked to the rear left side of the rollback truck while Mr. Barrow walked to the right side to ensure the straps which held the scallop dredge were intact. Finding the straps to be intact, Mr. Barrow walked back around the truck and told Mr. Parmley that he thought the dredge was loose; as Mr. Barrow arrived beside Mr. Parmley, the scallop dredge came down, striking Mr. Parmley. *Id.* at 37.

At the time of the accident, the rollback truck was insured under a motor vehicle liability policy issued by Penn National Mutual Casualty Insurance Company, Fulcher Aff. ¶ 9; Penn National's policy is not at issue in this case. The pickup was listed under plaintiff's policy which is at issue in this case. Plaintiff's policy issued to B&J Contracting provides liability coverage for injury or damage "arising out of the ownership, maintenance or use of [the] insured auto," and contains exclusions for bodily injury to an employee of the insured arising out of or within the course of that employee's employment or where the employee was performing duties related to the conduct of any insured's business. [DE 40-2] at 14 and 17 of 69. Plaintiff's policy also

2

contains an exclusion for any obligation for which an insured may be held liable under workers' compensation. *Id.* at 17. B&J Seafood is listed as an additional insured on the policy. *Id.* at 67.

Plaintiff filed this action On October 2, 2015. [DE 1]. On August 30, 2016, the matter was stayed on a motion by the plaintiff. [DE 25]. In support of its motion to stay, plaintiff argued that

> Through this declaratory action, Progressive Southeastern asserts coverage defenses which include policy exclusions of liability coverage of any damages recoverable under any workers compensation law, and which further exclude coverage for injury to any employee of an insured under its policy. The factual issues dispositive of these coverage issues are now before the N.C. Industrial Commission for adjudication. . . . Should the Industrial Commission rule that Mr. Parmley was acting in the course and scope of his employment at the time of the accident resulting in his death, that ruling would be dispositive of his wrongful death claims previously pending against Mr. Barrow and B&J Seafood, Inc., because where workers compensation benefits apply, those benefits are the exclusive remedy available to an employee against his employer or a co-employee. That in turn would be dispositive of the issues in this action, because there would be no liability in tort for which Progressive Southeastern's liability policy could feasibly afford coverage, and because it would directly implicate the coverage exclusion within Progressive Southeastern's policy for any damages covered by any workers compensation law. . . . Simultaneously, there is no prejudice to the Estate of Mr. Parmley for this Court to enter the requested stay of proceedings. As noted, such a stay would prevent all parties, including the Estate, from litigating the relevant issues relating to Mr. Parmley's employment in more than one forum at the same time.

[DE 24] at 2-5. The stay in this matter was lifted after the B&J Seafood defendants filed a notice that the proceeding in the North Carolina Industrial Commission had been dismissed. [DE 27, 28]. The North Carolina Industrial Commission held that it did not have jurisdiction over the matter where there had been no claim for workers compensation benefits by the Estate of John Parmley or his widow, and noted that Mr. Parmley's estate did not contest the determination of the workers' compensation carrier that workers compensation benefits should be denied on the basis that Mr. Parmley was not an employee of B&J Seafood Company. [DE 27-1].

This case then proceeded through discovery, after which the instant motion was filed.

DISCUSSION

A district court may in its discretion decline to exercise jurisdiction over a declaratory judgment action as no mandatory obligation to declare the litigant's rights is imposed by the Declaratory Judgment Act. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). A court's discretion in declining to exercise jurisdiction over a declaratory judgment action is not unfettered and it may only do so for good reason. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). Guiding a court's discretion in determining whether to exercise jurisdiction over a declaratory judgment action is whether "(1) [] the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) [] it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 325. Where, as here, there is an ongoing proceeding in the state court, issues of federalism, efficiency, and comity should also be considered. *Mitcheson v. Harris*, 955 F.2d 235, 237-40 (4th Cir. 1992); *see also Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994), *overruled on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995).

The Court in its discretion finds that good cause exists to decline to exercise jurisdiction over this declaratory judgment action. As of the date of the hearing before the undersigned, pending in at least one superior court of North Carolina is a wrongful death tort action brought by Mr. Parmley's estate. *See* [DE 38-3]. As noted by plaintiff in its motion to stay, whether Mr. Parmley was an employee of B&J Seafood is potentially dispositive of both this case and the estate's wrongful death action. Because the issue of Mr. Parmley's status as an employee of B&J Seafood or some related entity is currently and necessarily being litigated in the state courts, this Court, in the exercise of its discretion, declines to entertain the issue here. In arriving at this conclusion, the Court is avoiding "charg[ing] headlong into the middle of a controversy already

4

the subject of state court litigation" and thereby risking "'[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" *Mitcheson*, 955 F.2d at 239 (quoting *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1176 (1942)). The Court has also considered the res judicata effect of a ruling on Mr. Parmley's employment status by this Court, and has further considered whether this action constitutes procedural fencing, or, in other words, is "a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). Having weighed the relevant factors, the Court finds that while a judgment in this case would serve a useful purpose in clarifying and settling the issues, the questions of North Carolina state law are better left to be decided by the state courts in this instance.

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment [DE 37] is DENIED WITHOUT PREJUDICE and this action is DISMISSED WITHOUT PREJUDICE. Plaintiff's motion for leave to file modified Local Rule 56.1 Statement [DE 46] is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this **3** day of April, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE